UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
-----------------------------------------------------------------X
                                                              :
MELVIN ROSENBLATT, M.D.,                                      :   Civil Action No.
CONNECTICUT IMAGE GUIDED SURGERY,                             :
P.C.,                                                         :
                                                              :
                                   Plaintiffs,                :   **COMPLAINT; DEMAND**
                                                              :   **FOR JURY TRIAL**
                    - against -                               :
                                                              :
ADVANCED RADIOLOGY CONSULTANTS                                :
LLC, BRIDGEPORT RADIOLOGICAL                                  :   November 12, 2010
ASSOCIATES, LLC, ST. VINCENT'S MEDICAL                        :
CENTER,                                                       :
                                                              :
                                                              :
                                   Defendants.                :
                                                              :
-----------------------------------------------------------------X

Plaintiffs, Melvin Rosenblatt, M.D. ("Dr. Rosenblatt") and Connecticut Image Guided Surgery, P.C. (jointly, "Plaintiffs"), by their attorneys Menaker & Herrmann LLP, for their complaint against defendants Advanced Radiology Consultants, LLC ("Advanced Radiology"), Bridgeport Radiological Associates, LLC ("Bridgeport Radiological") (jointly, the "Advanced Radiology affiliates"), and St. Vincent's Medical Center ("St. Vincent's" or "the Hospital") (collectively, "Defendants"), allege as follows:

### Overview of the Action

1.    This action asserts claims against St. Vincent's and the Advanced Radiology affiliates for violations of Sections 1 and 2 of the Sherman

Act, Connecticut's Unfair Trade Practices Act ("CUTPA"), Connecticut's Antitrust Act, and the common law, arising out of a contract between Defendants in unreasonable restraint of trade and other anticompetitive and wrongful conduct. In furtherance of this anticompetitive agreement and course of conduct, St. Vincent's has wrongfully terminated Dr. Rosenblatt's staff privileges. Unless enjoined, this termination, effective December 31, 2010, will continue to adversely affect the quality of health care in the relevant markets and cause irreparable harm to Plaintiffs, competition and consumers.

2.     The Hospital's termination of Dr. Rosenblatt's privileges in furtherance of an anticompetitive agreement with one or both of the Advanced Radiology affiliates is a violation of federal and state antitrust law, and CUTPA. Plaintiffs seek injunctive and monetary relief pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, as well as CUTPA, Connecticut's Antitrust Act, and the common law. Further, the Hospital is not authorized to terminate Dr. Rosenblatt's staff privileges by entering into an exclusive contract with the Advanced Radiology affiliates because termination for this reason is not permitted by the Hospital's Bylaws.

**The Parties**

3.     Plaintiff Melvin Rosenblatt is a medical doctor with a specialty in interventional and vascular radiology, and is licensed to practice in the State of Connecticut. He is Board-certified in radiology with an advanced subspecialty board certification of additional qualification in vascular and

- 2 -

interventional radiology. Dr. Rosenblatt resides in New Rochelle, New York, and has his principal clinical office in Fairfield, Connecticut. He has been a member of the staff of St. Vincent's Medical Center since 2004.

4. Dr. Rosenblatt has authored or co-authored more than twenty professional publications, as well as chapters in three textbooks. He is a member of the American Medical Association, the American College of Phlebology, and the Society of Interventional Radiology. He also serves on various committees within these professional organizations. Dr. Rosenblatt has extensive teaching and lecturing experience, having participated in more than one hundred professional seminars, symposia and workshops. He has held the academic rank of associate professor at Yale University, Weill Cornell Medical College and New York University. In addition, he has held the position as section chief in Interventional Radiology at both Yale University and Memorial Sloan-Kettering Cancer Center.

5. Plaintiff Connecticut Image Guided Surgery, P.C. ("CIGS") is a professional corporation organized and existing under the laws of the State of Connecticut, located at 501 Kings Highway East, Suite 110, Fairfield, Connecticut. Dr. Rosenblatt is a principal of CIGS, the business entity through which he practices medicine. It is a common practice for physicians with privileges at the Hospital to provide their services through a corporate entity such as CIGS. All healthcare services provided by Dr. Rosenblatt are in effect also services provided by CIGS, and all constraints upon such services as described below are in effect constraints upon both Dr. Rosenblatt and CIGS. Consequently,

- 3 -

any injuries suffered by Dr. Rosenblatt are likewise injuries suffered by CIGS, and any injuries suffered by CIGS are injuries also suffered by Dr. Rosenblatt.

6.     Defendant Advanced Radiology is incorporated and existing under the laws of the State of Connecticut, with its principal place of business located at 56 Quarry Road, Trumbull, Connecticut. On information and belief, Advanced Radiology has a number of other affiliates under common control, including defendant Bridgeport Radiological. For purposes of this Complaint and except where expressly differentiated, the two defendant affiliates are referred to jointly as the "Advanced Radiology affiliates."

7.     Defendant St. Vincent's is a private hospital located at 2800 Main Street in Bridgeport, Connecticut. The Hospital is affiliated with the University of Connecticut School of Medicine and New York Medical College.

### Jurisdiction and Venue

8.     This action is brought in this Court pursuant to Sections 4 and 16 of the Clayton Act, as amended, 15 U.S.C. §§ 15(a) and 26, alleging violations of Sections 1 and 2 of the Sherman Act, as amended, 15 U.S.C. §§ 1 and 2, and under CUTPA, Conn. Gen. Stat. § 42-110a et seq., the Connecticut Antitrust Act, Conn. Gen. Stat. §§ 35-24, et seq., as well as under the common law. This Court has subject matter jurisdiction over the action under 28 U.S.C. § 1331 and 1337(a). It has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because the state law claims and the federal antitrust law claims derive from a common nucleus of operative fact.

9.     Venue is proper in the District of Connecticut (a) under 28 U.S.C. 1391(b) in that (i) both defendants are found in this district and (ii) a substantial part of the events or omissions giving rise to the claims occurred in this district, and (b) under Sections 4 and 12 of the Clayton Act, as amended, 15 U.S.C. §§ 15(a) and 22, because defendants are found in and transact, and have transacted, substantial business in the District of Connecticut.

10.     A substantial volume of interstate commerce involved in this case and affected by the violations of antitrust law alleged herein has occurred in this district. The parties to this action are engaged in the practice of medicine, and specifically the provision of interventional radiological services, an industry substantially affecting interstate commerce.

11.     The acts complained of herein have had, and unless enjoined, will continue to have substantial anticompetitive effects in this district.

### Background

12.     Dr. Rosenblatt is Board-certified in the medical specialty of interventional radiology, the practice of which requires additional training, skills and expertise beyond that required for the specialty of radiology. He received his M.D. at Downstate Medical College, served his radiology residency at Maimonides Medical Center in Brooklyn, New York, and trained in interventional radiology at John Hopkins Medical Center in Baltimore, Maryland. Interventional radiologists such as Dr. Rosenblatt are experts in the field of image-guided interventions, and have gained such expertise through years of intensive training in

radiology residencies and fellowships, during which time they perform hundreds of interventional procedures.

13.   Interventional radiology consists of a broad range of medical procedures, including endovascular venous surgery, vascular angioplasty, vascular stenting, embolization, image guided biopsies, radiofrequency ablation of tumors, fluoroscopic spinal interventions, nephrostomy, kyphoplasty and vertebroplasty. These procedures are entirely therapeutic rather than diagnostic in nature, in contrast with the activities of the vast majority of radiologists, whose principal focus is reading the results of radiological scans to determine the status of internal bodily organs and conditions, and to report on those readings to other physicians.

14.   In 2004, Dr. Rosenblatt obtained admitting privileges as well as privileges to perform interventional procedures through the Radiology Department at St. Vincent's as an independent attending physician. Such privileges at a Bridgeport hospital were necessary so that Dr. Rosenblatt could provide continuity of care for his patients. Dr. Rosenblatt has an out-patient facility where he treats vascular access problems for hemodialysis patients. Dr. Rosenblatt has a longstanding relationship with these patients who have multiple medical problems and are often admitted to the Hospital.

15.   In addition, hemodialysis access-related complications often result in hospitalizations. While in the hospital, the patients frequently require procedures to maintain the function of their access so that they can receive hemodialysis. Dr. Rosenblatt has admitted his patients to the Hospital when they

required this level of care and he has also provided the in-hospital access care to his patients when they were in the Hospital for other reasons.

16.   Dr. Rosenblatt's privileges at the Hospital are reflected in an appointment letter, dated September 23, 2009, which, together with the Hospital's Bylaws, governs his contractual relationship with the Hospital.

17.   Through his hard work and word of mouth regarding his skills, expertise and experience, Dr. Rosenblatt has built a highly successful interventional practice.

18.   Eighty percent of Dr. Rosenblatt's practice consists of dialysis patients. Such patients are often elderly and/or very ill. Many reside in Bridgeport nursing homes. In many cases, they are also poor. A large percentage of such patients receive Medicare or Medicaid. Because of their medical condition, these patients are unable to travel any significant distance and thus rely on the care available to them at St. Vincent's.

19.   St. Vincent's is a private hospital providing a full range and wide variety of specialized in-patient and out-patient medical services for patients in and around Bridgeport, Connecticut. On information and belief, St. Vincent's has a medical staff of approximately 450 physicians and employs more than 2,000 people.

20.   St. Vincent's was founded by the Daughters of Charity, and since it began admitting patients in 1905, it has been a hospital primarily serving elderly patients and those of limited financial means.

- 7 -

21.     During the mid-1970s a decision was made to move the Hospital from the City of Bridgeport to the adjacent Town of Fairfield. Unexpected building and land development costs and concern over inner city patient access to the Hospital, especially the elderly and families using services at the clinics, caused the Daughters of Charity and Board of Directors to keep the Hospital in Bridgeport.

22.     On information and belief, the Advanced Radiology affiliates consist of approximately thirty physicians providing radiology services at Bridgeport Hospital and recently at St. Vincent's and at seven or more freestanding centers located in Stamford and the greater Bridgeport area.

23.     On information and belief, all of the physicians employed by the Advanced Radiology affiliates perform diagnostic services, and the vast majority of their revenues comes from diagnostic services.

24.     While Dr. Rosenblatt possesses the types of skills offered by the radiologists employed by the Advanced Radiology affiliates, he concentrates his practice entirely in the field of interventional radiology.  Accordingly, Dr. Rosenblatt does not compete for patients with the Advanced Radiology affiliates with respect to the main activity of their physicians, i.e., providing diagnostic radiology services.

25.     On information and belief, six of the physician members of the Advanced Radiology affiliates practice interventional radiology, although none do so on a full-time basis.  In contrast, Dr. Rosenblatt is the only full-time

- 8 -

interventional radiologist practicing at the Hospital.  As such, he is the only interventional radiologist at the Hospital with the deep experience and expertise associated with a specialist in that field.

26.     On information and belief, in addition to their exclusive contract with St. Vincent's, Advanced Radiology, directly or through one of its affiliated entities, Bridgeport Radiology Associates, P.C. or Bridgeport Radiological, has a de facto exclusive relationship with Bridgeport Hospital, the only other hospital close enough to service dialysis patients and other patients requiring expeditious interventional radiology procedures in the immediate Bridgeport area.

27.     On information and belief, only physicians affiliated with the Advanced Radiology affiliates have staff privileges for interventional radiology at Bridgeport Hospital.

### The Exclusive Contract

28.     On information and belief, on or around May 1, 2010, St. Vincent's entered into a written agreement with one or both of the Advanced Radiology affiliates, which granted their physicians the exclusive privilege to provide radiology services at St. Vincent's (the "Exclusive Contract").  Because of this Exclusive Contract, doctors not affiliated with the Advanced Radiology affiliates, such as Dr. Rosenblatt, are being barred from performing any radiology services whatsoever at the Hospital, including interventional radiology.

29.     In a letter dated March 25, 2010, Susan Davis, R.N. Ed.D., advised Dr. Rosenblatt that his staff privileges at St. Vincent's Medical Center would be terminated effective December 31, 2010.

30.     This termination does not result from any peer review or issue concerning clinical competency.  Indeed, Dr. Rosenblatt's track record of patient care is unblemished and unchallenged.  He is supremely qualified to practice at the Hospital and continues to meet all objective criteria for interventional radiologists seeking privileges at the Hospital.  Rather, the March 25 letter confirms that the termination is due solely to the Exclusive Contract St. Vincent's has entered into with the Advanced Radiology affiliates.

31.     In her letter to Dr. Rosenblatt, Dr. Davis states: "Commencing on May 1, 2010, Bridgeport Radiological Associates, LLC will be the exclusive radiologists providing radiology services at St. Vincent's Medical Center.  As a result, radiologists not affiliated with Bridgeport Radiological Associates, LLC will not be permitted to perform radiology procedures at the Medical Center effective May 1, 2010." Although the letter refers to an exclusive arrangement with Bridgeport Radiological, the Advanced Radiology website nevertheless describes itself as the entity providing such services at St. Vincent's.

32.     The letter goes on to provide for a "transition period" lasting until December 31, 2010, during which time Dr. Rosenblatt's access to the Hospital would be permitted.

- 10 -

33.     Dr. Rosenblatt has requested a copy of the Exclusive Contract, but the Hospital has refused to provide it to him.

34.     Plaintiffs have objected to the Hospital's termination of Dr. Rosenblatt's privileges based on the Exclusive Contract with Advanced Radiology/Bridgeport Radiology, including by letter on September 8, 2010, on the grounds that such termination is inconsistent with the Hospital's Bylaws and that the agreement constitutes an unreasonable restraint of trade in violation of antitrust and unfair competition laws, and Plaintiffs have requested that Dr. Rosenblatt's privileges be continued rather than terminated on December 31, 2010.

35.     The Hospital has refused to reverse the impending termination of Dr. Rosenblatt's privileges without stating any reason other than its Exclusive Contract with the Advanced Radiology affiliates.

36.     In order to be able to continue to provide in-patient treatment to his patients, after receiving the Hospital's notification that his privileges would be terminated, Dr. Rosenblatt applied for privileges at Bridgeport Hospital.

37.     Shortly after he submitted his application, Dr. Rosenblatt contacted the Chief Medical Officer of Bridgeport Hospital to discuss his application, who told Dr. Rosenblatt that there were no problems with the application and that it would just take a few weeks to verify the appropriate documentation.

38.     However, following this conversation, Dr. Rosenblatt received a letter from Bridgeport Hospital's Chief Medical Officer, dated August

3, 2010, which stated that "[t]he Hospital Board of Directors has adopted a temporary moratorium on the processing of applications for medical staff appointment and clinical privileges in radiology pending assessment of options for the overall delivery of imaging services in a manner consistent with the hospital's mission and strategic planning." On information and belief, only a few weeks before Dr. Rosenblatt was informed of the purported "moratorium," a radiologist associated with the Advanced Radiology affiliates was able to obtain staff privileges at Bridgeport Hospital.

39.     On information and belief, the only physicians who currently have radiology privileges at Bridgeport Hospital are those employed by the Advanced Radiology affiliates. This de facto exclusive arrangement at Bridgeport Hospital results in the Advanced Radiology affiliates' having a monopoly in the Bridgeport area.

40.     On information and belief, the Advanced Radiology affiliates are conspiring with Bridgeport Hospital and St. Vincent's in order to maintain their monopoly position.

### St. Vincent's Hospital Bylaws

41.     When a physician such as Dr. Rosenblatt becomes a member of St. Vincent's Medical Staff, a contractual relationship is formed between the physician and the Hospital, of which the Hospital's Bylaws are an integral part.

42.     According to the St. Vincent's Medical Staff Bylaws ("Bylaws"), the Hospital's entering into an exclusive agreement (e.g., the

Exclusive Contract) with one health care provider does not justify terminating the privileges of another such provider. In particular, Section V.C of the Bylaws identifies the criteria governing the process of reappointment for medical staff members. That provision does not mention exclusive contracts at all, but instead recites issues concerning competence and quality of professional performance. Accordingly, under the Bylaws, an exclusive contract cannot be the basis for denying reappointment.

43.     Section I of the Bylaws provides, in relevant part, as follows: "Membership on the Medical Staff of the Medical Center is a privilege which shall be extended, consistent with the needs of the Medical Center, only to those professionally competent physicians and dentists who continuously meet the qualifications, standards, and requirements set forth in these Bylaws."

44.     Section V.C of the St. Vincent's Bylaws specifically provides as follows:

> Each recommendation concerning the reappointment of a Medical Staff member and the clinical privileges to be granted upon reappointment shall be based on the following:

> 1.     the membership criteria specified in Section I of this Article;

> 2.     evidence of professional performance, judgment, and clinical or technical skills, as indicated in part by the results of performance improvement activities and comparison of physician data to aggregate data when available;

3.   evidence of adherence to the Mission of the Medical Center and the <u>Ethical and Religious Directives for Catholic Health Facilities</u>;

4.   attendance at Medical Staff and department meetings and participation in Medical Staff affairs;

5.   compliance with the Medical Staff Bylaws and Rules and Regulations;

6.   evidence of behavior in compliance with St. Vincent's Health Services/St. Vincent's Medical Center Corporate Responsibility Program.

7.   cooperation with Medical Center personnel and other practitioners;

8.   use of the Medical Center's facilities for the practitioner's patients;

9.   evidence of fulfillment of continuing education requirements;

10.   any other information that has been reported pursuant to state or federal law and obtained by the Medical Center from appropriate sources.

11.   Primary source verification of current licensure.

45.   Prior to entering into its Exclusive Contract with the Advanced Radiology affiliates, St. Vincent's had an exclusive contract with a different provider of radiology services, Fairfield County Radiological Associates. Consistent with the fact that the Bylaws do not allow termination of privileges due to contract exclusivity, Dr. Rosenblatt and another radiologist retained their

privileges to practice at the Hospital for more than seven years, notwithstanding that contract.

46.    On or around May 2010, the Hospital presented for approval by the Medical Staff certain proposed new bylaws, which included language that would have made the existence of an exclusive contract with one group of physicians in and of itself a permissible basis for terminating the privileges of one or more other physicians.  The Medical Staff overwhelmingly objected to this proposed change, the vote on the new bylaws was postponed, and the proposed bylaws were withdrawn pending revision.

### The Relevant Markets and Defendants' Market Power

47.    The relevant product/service market is the market for in-patient therapeutic interventional radiology services, i.e., those requiring the patient's use of hospital facilities.  Such services include vascular intervention (a) for dialysis patients, (b) for patients with vascular disorders such as venous and arterial malformations, (c) for patients with liver disorders and problems and (d) for patients with cancers that require biopsies, embolizations and tumor ablation treatments.

48.    Since many patients in need of such services are already hospitalized or must be immediately hospitalized to permit the services described above, a physician providing such services must have staff privileges at a local hospital to which patients can be admitted.  Without such privileges, Dr. Rosenblatt cannot serve patients in need of such services.  Consistent with this,

since it is now known within the local physician community that Dr. Rosenblatt's privileges are being terminated due to the Exclusive Contract, Dr. Rosenblatt is already receiving fewer referrals than in the past.

49.     One physician has explicitly told Dr. Rosenblatt that he has stopped referring patients to Dr. Rosenblatt because he could not be sure that Dr. Rosenblatt could continue to treat such patients in light of the impending termination of privileges.

50.     The field of in-patient interventional radiology comprising the relevant market in which Dr. Rosenblatt is a practitioner does not involve elective procedures for which the patient can plan in advance and arrange for significant travel.  Rather, it is a species of urgent care requiring the expeditious access to a hospital's facilities.

51.     With respect to dialysis patients, in particular, many of these patients are already admitted to the Hospital and must be treated there.  Moreover, dialysis patients who are not already admitted ordinarily cannot travel for extended distances in order to receive treatment.  In addition, after receiving their treatment, which requires sedation, such patients are unable to operate a motor vehicle, and therefore often must rely upon local public bus transportation in Bridgeport.   The inability to travel extended distances applies to other interventional radiology patients as well, such as patients requiring cancer treatment, which patients also have their own oncologists and other sub-specialists involved in their care located at or near the Hospital.

- 16 -

52.     Many of the patients who may acquire an urgent need for in-patient interventional radiology are at first served by Dr. Rosenblatt on an out-patient basis at his office in Fairfield.  When those patients must be admitted to the Hospital for further procedures that require such a facility, Dr. Rosenblatt can continue to take care of them at the Hospital.  This is far preferable to transferring the patients to another physician in the middle of the relationship because Dr. Rosenblatt is already aware of the patient's history and his/her specific issues, and mistakes are thus less likely.  Any transfer to a different physician is both inefficient and, insofar as it is more likely to lead to errors and complications in treatment, detrimental to the quality of care.

53.     The relevant geographic market is the area within the circle the center of which is St. Vincent's and the radius is approximately ten miles, i.e., Bridgeport, Connecticut and its suburbs in Fairfield County (the "Geographic Market").

54.     Upon information and belief, less than five percent of patients travel outside the Geographic Market for in-patient treatment involving dialysis access intervention.

55.     St. Vincent's and the Advanced Radiology affiliates have immense market power in the Geographic Market.  As one of only two hospitals in the Geographic Market, St. Vincent's inevitably has market power in the market for health services requiring urgent access to its facilities and where travel to facilities outside the Geographic Market is impracticable.

56.    Upon information and belief, the Advanced Radiology affiliates have both an actual Exclusive Contract with St. Vincent's and a de facto exclusive relationship with Bridgeport Hospital, as no one other than those radiologists employed by the Advanced Radiology affiliates are being granted staff privileges for any kind of radiology at Bridgeport Hospital. Due to the arrangements with St. Vincent's and with Bridgeport Hospital, the Advanced Radiology affiliates have monopoly power in the Geographic Market, with a stranglehold on the product/service market for in-patient interventional radiology within that Geographic Market.

### Adverse Effects on Competition and Quality of Care

57.    Since 2004 Dr. Rosenblatt has had many patients who often require prompt in-patient care at the Hospital. The Hospital's termination of Dr. Rosenblatt's privileges on the basis of its Exclusive Contract with Advanced Radiology will force Dr. Rosenblatt to abandon these patients in the midst of their treatment, resulting in a transfer to a physician the patient has not previously chosen, which will entail an increased potential for errors and complications – based on communications lapses, unfamiliarity with the patient and his/her history and specific issues – that would not otherwise occur.

58.    As a result of the compelled change of treating physician, patients will not only be deprived of Dr. Rosenblatt's specialized services and expertise, they will be denied the ability to choose a provider in a competitive marketplace. Dr. Rosenblatt will not only lose his ability to carry through with his

treatment of the patient, which may adversely affect quality of care, but also a material part of his patient base, which will adversely affect him economically.

59.     Moreover, the termination of Dr. Rosenblatt's privileges by the Hospital will have to be disclosed in all subsequent applications for privileges at any other hospital, which will substantially disadvantage Dr. Rosenblatt's ability to obtain such privileges and to compete with Advanced Radiology.

60.     The Exclusive Contract harms competition in other ways as well.   It insulates the Advanced Radiology affiliates from price and quality competition, excludes qualified alternative providers of services such as Dr. Rosenblatt, thereby limiting patient choice and reducing the quantity and quality of interventional radiology in the Geographic Market.

61.     In addition, the quality of patient care will suffer.   Dr. Rosenblatt is qualified to perform various procedures that the physicians employed by the Advanced Radiology affiliates cannot do or cannot do as competently. Indeed, since the time the Advanced Radiology affiliates obtained the exclusive contract, there has been a notable deterioration in the quality of patient care.

62.     For instance, there have been numerous incidents over the past few months alone in which Dr. Rosenblatt has had to be called in to take over the care of a particular patient because physicians employed by the Advanced Radiology affiliates were unable or unwilling to provide the necessary care.  Upon Dr. Rosenblatt's expulsion from the Hospital due to the Exclusive Contract, the

quality of care available to the Hospital's patients in need of interventional radiology will deteriorate even further.

63.    Moreover, the Advanced Radiology affiliates are already exploiting the anticompetitive power conferred on it by the Exclusive Contract. Due to the Exclusive Contract, the Advanced Radiology affiliates now constitute the exclusive provider of first and second level services for a wide variety of patients.  In certain cases, after the Advanced Radiology affiliates have performed diagnostic services for a patient, their radiologist does not simply return the patient to his/her primary physician, as would happen in the ordinary course.  Instead, the radiologists employed by the Advanced Radiology affiliates strongly recommend additional tests or specific interventions, including embolization, tumor ablation procedures, and biopsies, among others, that have not been determined to be medically necessary and serve only to inefficiently increase costs and thereby allow the Advanced Radiology affiliates to reap monopoly profits.

64.    Defendants' exclusionary and anticompetitive conduct does not have a legitimate business justification, as it is not justified on efficiency grounds and it does not benefit consumers.  The termination of Dr. Rosenblatt's staff privileges is an attempt by the Advanced Radiology affiliates to avoid competition on the merits, because it eliminates Dr. Rosenblatt and CIGS as a competitor and thereby increases Defendants' market power in the Geographic Market, to the detriment of competition and patient choice.

## COUNT I
### (Restraint of Trade)

65.     Plaintiffs repeat and incorporate by reference the allegations of paragraphs 1 through 64 as if fully set forth herein.

66.     The activities of Defendants and the services described above are in, and substantially affect, interstate commerce.

67.     Each defendant is a separate, legally distinct entity and an independent economic actor, and each has the capacity to conspire with the other. Each of them entered into the Exclusive Contract on an arm's length basis.

68.     On information and belief, physicians employed by the Advanced Radiology affiliates are not employees of St. Vincent's, are not salaried and do not receive employment benefits from St. Vincent's.

69.     Defendants have engaged in predatory, anticompetitive and exclusionary conduct to acquire and/or maintain their market power in the relevant market and to exclude competitors such as Plaintiffs in that Defendants, inter alia, have (i) illegally tied the use of the Hospital's facilities and in-patient services to the requirement that the patient and payer also purchase radiology services from the Advanced Radiology affiliates; (ii) refused to provide qualified physicians such as Dr. Rosenblatt access to the Hospital's facilities by denying him privileges to the detriment of patients and high-quality health care; and (iii) raised barriers to competition, and increased costs for consumers, through control and allocation of essential Hospital facilities to a single competitor in the relevant market.

70.     On or about May 1, 2010, Defendants entered into and engaged in a continuing contract, combination or conspiracy in unreasonable restraint of trade and commerce, i.e., the Exclusive Contract, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, the substantial terms of which effectively eliminate competitors such as Plaintiffs.

71.     The Exclusive Contract restricts St. Vincent's patients' freedom of choice, and suppresses competition in the provision of in-patient interventional radiology using the most cost-efficient treatments and the highest standard of care.

72.     Defendants have substantial market power to restrict output and influence prices in the relevant markets.

73.     Defendants' unlawful combination and conspiracy to harm and restrain competition through the Exclusive Contract will result in actual injury to Plaintiffs, as well as harm to competition and consumers.

74.     Among other things, Defendants are causing material harm to competition by reducing the number of providers of interventional radiology and by causing a demonstrable decline in the quality of patient care.

75.     By reason of the unreasonable restraint of trade described above, Plaintiffs are being injured in their business or property.

76.     The injury to Plaintiffs is cognizable in equity because such injury cannot be fully redressed in money damages and the conduct from which it arises threatens to cause future harm for which an award of damages would be an

- 22 -

inadequate remedy. Defendants' conduct is continuing and unless equitable relief is granted, competition in interventional radiology in the Geographic Market will continue to be substantially adversely impacted.

77. In addition, the injury directly and proximately results from the conduct complained of, and the injury constitutes the kind of injury that the antitrust laws are intended to prevent, namely harm to competition by adversely affecting consumer welfare and quality of service.

**COUNT II**
(Illegal Tying by the Hospital)

78. Plaintiffs repeat and incorporate by reference the allegations of paragraphs 1 through 77 as if fully set forth herein.

79. Use of the Hospital's facilities and in-patient services constitute a separate product from in-patient interventional radiology.

80. As a result of the anticompetitive Exclusive Contract, the Defendants have forced those patients using the Hospital's facilities who require interventional radiology services while hospitalized there to purchase those services from the Advanced Radiology affiliates.

81. This unlawful tying arrangement has affected a substantial part of the market for in-patient interventional radiology services and it has suppressed competition by denying patients freedom of choice and access to competitive, lower cost and higher quality alternatives such as Plaintiffs.

82.     The unlawful tying arrangement has foreclosed any and all interventional radiologists other than those employed by the Advanced Radiology affiliates from competing in the field of in-patient interventional radiology services in the Geographic Market.

83.     The Hospital's tying arrangement is in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

84.     The Hospital's illegal tying arrangement is motivated by anticompetitive ends and has no countervailing efficiency or consumer welfare benefits.   To the contrary, the anticompetitive arrangement has directly and adversely affected customers by restricting consumer choice, raising prices for in-patient interventional radiology services by recommending interventions and additional imaging studies on patients that are not or may not be necessary, and reducing the quality of in-patient interventional radiology services at the Hospital.

85.     Plaintiffs are being injured in their business or property by reason of this unlawful tying arrangement.

86.     The injury to Plaintiffs is cognizable in equity because such injury cannot be fully redressed in money damages and the conduct from which it arises threatens to cause future harm for which an award of damages would be an inadequate remedy.  Defendants' conduct is continuing and unless equitable relief is granted, competition in interventional radiology in the Geographic Market will continue to be substantially adversely impacted.

87.     In addition, the injury directly and proximately results from the conduct complained of, and the injury constitutes the kind of injury that the antitrust laws are intended to prevent, namely harm to competition by adversely affecting consumer welfare and quality of service.

## COUNT III
### (Monopolization/Attempted Monopolization by the Advanced Radiology Affiliates)

88.     Plaintiffs repeat and incorporate by reference the allegations of paragraphs 1 through 69 and 71 through 77 as if fully set forth herein.

89.     The Advanced Radiology affiliates have monopoly power in in-patient interventional radiology services in the Geographic Market.

90.     The Advanced Radiology affiliates have wrongfully acquired and maintained their monopoly power through anticompetitive misconduct aimed at avoiding competition on the merits by excluding qualified competing physicians such as Dr. Rosenblatt from practicing in the Geographic Market.

91.     The Advanced Radiology affiliates have engaged and are engaging in exclusionary and anticompetitive behavior by, inter alia, (i) negotiating and executing an anticompetitive Exclusive Contract for the purpose and with the effect of harming competition and erecting barriers to entry for other radiologists seeking to compete in the relevant market; (ii) conspiring to exclude qualified physicians such as Dr. Rosenblatt from the Hospital's facilities, and from Bridgeport Hospital, to the detriment of patients and high-quality health care; and

- 25 -

(iii) raising barriers to competition, and the cost of health care, through exclusive control of essential facilities at the Hospital and at Bridgeport Hospital.

92.    The conduct of the Advanced Radiology affiliates is motivated by anticompetitive ends, has no countervailing efficiency or consumer welfare benefits, and was undertaken with a specific intent to gain a monopoly in the product and geographic markets alleged herein.  To the contrary, its conduct has directly and adversely affected customers through a restriction on consumer choice, a raising of costs for interventional radiology services and a reduction in the quality of interventional radiology at the Hospital.

93.    The anticompetitive conduct of the Advanced Radiology affiliates poses a substantial threat to competition in the Geographic Market.

94.    The anticompetitive conduct of the Advanced Radiology affiliates has foreclosed any and all interventional radiologists other than those entities from competing in the field of in-patient interventional radiology in the Geographic Market.

95.    The inability of an interventional radiologist who is not employed by the Advanced Radiology affiliates to provide in-patient care in the relevant Geographic Market undermines that physician's ability to obtain referrals for out-patient interventional radiology because patients and their referring physicians are less likely to consult an interventional radiologist who, when an out-patient case changes into an urgent in-patient case, cannot continue providing

the necessary in-patient services.  Indeed, since the Exclusive Contract has gone into effect, Dr. Rosenblatt has received fewer referrals than in the past.

96.    As a result of the foregoing, the Advanced Radiology affiliates have violated Section 2 of the Sherman Act, 15 U.S.C. § 2, causing injury to the business and property of Plaintiffs.

97.    The injury to Plaintiffs is cognizable in equity because such injury cannot be fully redressed in money damages and the conduct from which it arises threatens to cause future harm for which an award of damages would be an inadequate remedy.  The anticompetitive conduct of the Advanced Radiology affiliates is continuing and, unless equitable relief is granted, competition in interventional radiology in the Geographic Market will continue to be substantially adversely impacted.

98.    In addition, the injury directly and proximately results from the conduct complained of, and the injury constitutes the kind of injury that the antitrust laws are intended to prevent, namely harm to competition by adversely affecting consumer welfare and quality of service.

### COUNT IV
(Conspiracy to Monopolize)

99.    Plaintiffs repeat and incorporate by reference the allegations of paragraphs 1 through 98 as if fully set forth herein.

100.    As described above, the anticompetitive conduct of the Hospital and the Advanced Radiology affiliates constitutes a conspiracy to

monopolize trade or commerce in in-patient interventional radiology services in the Geographic Market, causing injury to Plaintiffs' business or property and threatened loss or damage to Plaintiffs' business or property.

## COUNT V
(Breach of Bylaws/Contract by the Hospital)

101.   Plaintiffs repeat and incorporate by reference the allegations of paragraphs 1 through 64 as if fully set forth herein.

102.   The St. Vincent's Bylaws, as approved by the Hospital's Board of Trustees, are an integral part of a contractual relationship between the Hospital and its physicians, such as Dr. Rosenblatt.

103.   The Hospital was aware that CIGS was the entity through which Dr. Rosenblatt conducted business, that Dr. Rosenblatt's services were billed through CIGS, and therefore that a contract benefiting Dr. Rosenblatt would necessarily benefit CIGS.   Plaintiff CIGS is a third-party beneficiary of the contract with the Hospital.

104.   The Bylaws outline the rights, duties and privileges of St. Vincent's Medical Staff, as well as the procedures for hearings, corrective action and appeals.

105.   The Hospital is obligated to honor the Bylaws in full, and the Bylaws vest Plaintiffs with enforceable rights in the event of a breach by the Hospital.

106. The failure of a hospital to adhere to its bylaws is a significant public policy concern, as it potentially threatens the safe and sound operation of the hospital and the quality of care it administers to its patients.

107. As a member of St. Vincent's Medical Staff, Dr. Rosenblatt is vested with enforceable rights with respect to any breach of the terms and requirements of the Bylaws.

108. As a Medical Staff member, Dr. Rosenblatt was entitled to have his application for reappointment determined in accordance with the Bylaws. The termination of his privileges due to the Hospital's having entered into an exclusive contract with Advanced Radiology was inconsistent with his rights under the Bylaws.

109. Dr. Rosenblatt applied for privileges at the specific request of St. Vincent's on March 17, 2004. His application was granted, and he has been an active member of the Hospital's Medical Staff and in good standing ever since. Pursuant to the Bylaws, Dr. Rosenblatt applied for, and was granted, renewal of his privileges at the Hospital from 2005-2010.

110. As described above, the Hospital's decision not to renew Dr. Rosenblatt's privileges was contrary to the Bylaws. In informing Dr. Rosenblatt that his privileges would not be renewed due to the Hospital's having entered into an exclusive contract with the Advanced Radiology affiliates, the Hospital violated the Bylaws and breached their contractual obligations to Plaintiffs.

- 29 -

111.    As a result of the Hospital's actions, Plaintiffs have suffered and will continue to suffer damages.

112.    The Hospital's acts as aforesaid have caused and will continue in the future to cause injury to Plaintiffs and to patients by, among other things, undermining the integrity of the Hospital's administration and the quality of patient care.

**COUNT VI**
(Breach of Covenant of Good Faith and Fair Dealing by the Hospital)

113.    Plaintiffs repeat and incorporate by reference the allegations of paragraphs 1 through 64, and paragraphs 102 through 112, as if fully set forth herein.

114.    Pursuant to the St. Vincent's Bylaws, Plaintiffs had a reasonable expectation that Dr. Rosenblatt's application for reappointment would be determined in accordance with St. Vincent's Bylaws and that his privileges would not be terminated.

115.    By terminating Dr. Rosenblatt's privileges because it had entered into the Exclusive Contract with the Advanced Radiology affiliates, the Hospital engaged in conduct that injured Plaintiffs' right to have Dr. Rosenblatt's application for reappointment determined in accordance with the St. Vincent's Bylaws and his reasonable expectation that his privileges would not be terminated because of an exclusive contract with other radiologists.

- 30 -

116.   In failing to reappoint Dr. Rosenblatt and terminating his privileges, the Hospital acted in bad faith in that it applied or interpreted the St. Vincent's Bylaws in a manner that evaded the spirit of those Bylaws and their purpose, resulting in a denial of the reasonable expectations of Plaintiffs.

117.   The Hospital's decision not to renew Dr. Rosenblatt's privileges breached the implied covenant of good faith and fair dealing existing between the Hospital and Plaintiffs.

118.   As a result of the Hospital's actions, Plaintiffs have suffered and will continue to suffer damages.

## COUNT VII
(Tortious Interference with Business Expectancies by the Hospital)

119.   Plaintiffs repeat and incorporate by reference the allegations of paragraphs 1 through 64 as if fully set forth herein.

120.   Plaintiffs have a business relationship with various patients and physicians at the Hospital, of which relationships the Hospital is aware.

121.   The Hospital's decision not to renew Dr. Rosenblatt's privileges was tortious and malicious, and was intended to interfere with Plaintiffs' patient and physician relationships and business expectancies.

122.   As such, the Hospital's conduct constitutes a tortious interference with Plaintiffs' business expectancies.

123.   As a direct and proximate result of the Hospital's conduct, Plaintiffs have suffered and will continue to suffer damages from loss of referrals from physicians and loss of patient relationships.

## COUNT VIII
(Violation by Defendants of Connecticut Antitrust Act,
Conn. Gen. Stat. §§ 35-26 and 35-28 by Restraint of Trade)

124.   Plaintiffs repeat and incorporate by reference the allegations of paragraphs 1 through 64 and 66 through 77 as if fully set forth herein.

125.   On or about May 1, 2010, Defendants entered into and engaged in a continuing contract, combination or conspiracy in unreasonable restraint of trade and commerce, i.e., the Exclusive Contract, in a part of intrastate and interstate trade and commerce in violation of Section 35-26 of the Connecticut General Statutes.

126.   On or about May 1, 2010, Defendants entered into and engaged in a continuing contract, combination or conspiracy for the purpose, or having the effect of the Hospital refusing to deal with Plaintiffs and coercing, persuading or inducing patients to refuse to deal with Plaintiffs in connection with the providing of in-patient interventional radiology services in the Geographic Market in violation of Section 35-28 of the Connecticut General Statutes.

127.   Defendants' conduct described in this Count has caused injury to Plaintiffs' business or property and will hereafter cause loss or damage to Plaintiffs' business or property.

**COUNT IX**
(Violation by the Hospital of the Connecticut Antitrust Act,
Conn. Gen. Stat. §§ 35-26, 35-28 and 35-39 by Illegal Tying by the Hospital)

128.   Plaintiffs repeat and incorporate by reference the allegations of paragraphs 1 through 64 and 78 through 87 as if fully set forth herein.

129.   As described above, Defendant Hospital's conduct constituted a violation of Section 35-26 of the Connecticut General Statutes in that it constitutes a contract, combination, or conspiracy in restraint of a part of intrastate and interstate trade or commerce.

130.   As described above, Defendant Hospital's conduct constitutes a violation of Section 35-29 of the Connecticut General Statutes in that it constitutes a contract for the furnishing of services on the condition or understanding that the purchaser shall not deal in the services of a competitor of the Hospital, the effect of which may be to substantially lessen competition or tend to create a monopoly in the market for the providing of in-patient interventional radiology services in the Geographic Market.

131.   Defendants' conduct described in this Count has caused injury to Plaintiffs' business or property and threatens loss or damage to Plaintiffs' business or property.

**COUNT X**

(Violation by the Advanced Radiology Affiliates of the Connecticut Antitrust Act,
Conn. Gen. Stat. § 35-27, by Monopolization/Attempted Monopolization)

132.   Plaintiffs repeat and incorporate by reference the allegations of paragraphs 1 through 64, 89 through 98, 125 through 127, and 129 through 131, as if fully set forth herein.

133.   As described above, the Advanced Radiology affiliates' conduct constitutes a violation of Section 35-27 of the Connecticut General Statutes in that it constitutes an attempt to monopolize and a monopolization of a part of trade or commerce in in-patient interventional radiology services in the Geographic Market, causing injury to Plaintiffs' business or property and threatened loss or damage to Plaintiffs' business or property.

**COUNT XI**

(Connecticut Antitrust Act—Conspiracy to Monopolize)

134.   Plaintiffs repeat and incorporate by reference the allegations of paragraphs 1 through 64, 100, 125 through 127, and 129 through 131 as if fully set forth herein.

135.   As described above, the anticompetitive conduct of the Hospital and the Advanced Radiology affiliates constitutes a conspiracy to monopolize a part of trade or commerce in in-patient interventional radiology services in the Geographic Market, causing injury to Plaintiffs' business or property and threatened loss or damage to Plaintiffs' business or property.

- 34 -

**COUNT XII**

(Violation of the Connecticut Unfair Trade Practices Act, § 42-110g(a))

136.   Plaintiffs repeat and incorporate by reference the allegations of paragraphs 1 through 82, and paragraphs 84 through 95, and paragraphs 97 through 135, as if fully set forth herein.

137.   The acts of Hospital described in this Count were done in the conduct of its primary trade and commerce of enabling it to provide and providing general hospital medical services.

138.   The acts of the Advanced Radiology affiliates described in this Count were done in the conduct of their primary trade and commerce of enabling them to provide and providing radiology services, including interventional radiology services.

139.   The acts of Defendants described in this Count constituted unfair competition in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b (a).

140.   The acts of Defendants described in this Count constituted unfair acts and practices in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b (a) in that they offend public policy as it has been established by statutes, the common law or otherwise or were within at least the penumbra of some common law, statutory or other established concept of unfairness, were and are immoral, unethical, oppressive, or unscrupulous, and caused substantial injury to consumers, competitors or other business persons

- 35 -

which Plaintiffs could not reasonably have avoided and were and are not outweighed by any benefit to Plaintiffs, consumers or competition that Defendants' acts or practices produced.

141.   Defendants' violations of the Connecticut Unfair Trade Practices Act described in this Count caused and threaten to cause an ascertainable loss of money or property to Plaintiffs in that they incurred legal fees and other expenses in connection with investigating and attempting to remedy the harm caused by Defendants without having to commence a lawsuit and suffered an injury to their reputation as a result of the termination of Dr. Rosenblatt's privileges at the Hospital.

142.   The Defendants' violations of the Connecticut Unfair Trade Practices Act described in this Count have caused and threaten to cause Plaintiffs actual damages and will also cause Plaintiffs irreparable harm for which an award of money damages would be an inadequate remedy which cannot be fully redressed in money damages.

143.   The acts and practices of Defendants described in this Count were done with a reckless indifference to the rights of Plaintiffs or were an intentional and wanton violation of those rights.

## CLAIM FOR RELIEF

The Plaintiffs claim:

1.   A preliminary and permanent injunction, pursuant to Clayton Act § 16, 15 U.S.C. § 26; Conn. Gen. Stat. § 35-34 and Conn. Gen. Stat. § 42-110g(a):

a.   enjoining Defendants from engaging in the exclusionary conduct alleged in Counts III, IV, VIII, IX, X, XI and XII;

b.   enjoining Defendants from enforcing between themselves any provision of the Exclusive Contract that purports to require the Hospital to terminate Dr. Rosenblatt's staff privileges or otherwise disallow him to practice at the Hospital;

c.   enjoining Defendant Hospital from dishonoring any and all provisions of the Bylaws which they are required to honor;

d.   enjoining Defendant Hospital from interfering with Plaintiff's business expectancies by the conduct alleged in Count VII.

2.   Money damages with respect to all Counts.

3.   Treble damages pursuant to Clayton Act § 4, 15 U.S.C. § 15(a) with respect to Counts I, II, III, IV and, pursuant to Conn. Gen. Stat. § 35-35 with respect to Counts VIII, IX, X, XII.

4.   Common law punitive damages with respect to Count VII.

5.   Statutory punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a) with respect to Count XII.

6.     Costs and attorneys' fees pursuant to Clayton Act § 4, 15 U.S.C. § 15 with respect to Counts I, II, III, IV, pursuant to Conn. Gen. Stat. 35-35 with respect to Counts VIII, IX, X, XI, and pursuant to Conn. Gen. Stat. § 42-110g(d) with respect to Count XII.

7.     Such other and further relief as the Court may deem just and proper with respect to all Counts.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues triable by a jury.

## CERTIFICATION

Plaintiff certifies that, pursuant to Conn. Gen. Stat. § 35-37 and § 42-110g(c), a copy of this Complaint has been mailed, first class postage prepaid, to the Attorney General and the Commission of Consumer Protection of the State of Connecticut.

THE PLAINTIFFS
MELVIN ROSENBLATT, M.D. and
CONNECTICUT IMAGE GUIDED
SURGERY, P.C.

By:_____
David L. Belt (ct04274)

JACOBS, GRUDBERG, BELT, DOW
& KATZ P.C.
350 Orange Street
New Haven, Connecticut 06503
Telephone No. 203-772-3100
Facsimile No. 203-772-1691
Email: dbelt@jacobslaw.com

Their Attorneys

Of Counsel:

Richard G. Menaker
MENAKER & HERRMANN LLP
10 East 40th Street, 43rd Floor
New York, New York 10016
Telephone No. 212-545-1900
Facsimile No. 212-545-1656
Email: rmenaker@mhjur.com